OPINION
{¶ 1} Defendant-appellant, Jennifer T. Conway ("defendant"), appeals from a judgment of the Franklin County Court of Common Pleas finding her guilty of one count of receiving stolen property, a felony of the fourth degree, in violation of R.C.2913.51.
 {¶ 2} According to the state's evidence, law enforcement officers executed a search warrant on March 2, 2002 at defendant's residence at 1944 Dyer Road in Groveport to obtain evidence linking James Conway, III ("Conway III"), defendant's brother, to a recent murder. Conway III had been arrested on February 23, 2002 in connection with the murder and a felonious assault committed at the Dockside Dolls Nightclub in Columbus, and he was in jail at the time of the search. During the search of defendant's residence, police found evidence that Conway III had lived in one of the bedrooms, and they seized several cases of ammunition of the same caliber as that found at the Columbus murder scene.
 {¶ 3} In the course of the search, the police also discovered numerous cases of Act II brand microwave popcorn that filled defendant's two-car garage from front to back and floor to ceiling. Given their discovery of the popcorn and upon further investigation, the police obtained and executed a second search warrant on March 5, 2002 to seize the popcorn, which totaled 1,910 cases, weighed over 40,000 pounds, and had a retail value of approximately $50,000. The popcorn had been manufactured by and stolen from ConAgra Foods in Marion, Ohio, sometime between February 7 and 11, 2002.
 {¶ 4} By indictment filed March 20, 2002, defendant was charged with one count of receiving stolen property. The matter was tried to a jury on March 4, 5, and 6, 2003; on March 10, 2003, the jury found defendant guilty as charged. By judgment entry filed June 11, 2003, the court sentenced defendant to community control/basic supervision for a period of five years and ordered defendant to pay restitution to ConAgra Foods in the amount of $27,840. Defendant appeals, assigning the following errors:
First Assignment of Error
The trial court erred in denying Appellant's motion to suppress evidence discovered as a result of an invalid search warrant, in violation of the First and Fourteenth Amendments to the United States Constitution and Article I, Section 14 of the Ohio Constitution.
Second Assignment of Error
The trial court erred in rejecting defense requests to include in the jury instructions defining the offense of receiving stolen property the elements of possession and dominion and control.
Third Assignment of Error
The jury verdict was not supported by sufficient credible evidence and was against the manifest weight of the evidence. As a result, Appellant was denied due process protections under the state and federal Constitutions.
Fourth Assignment of Error
The trial court erred in ordering Appellant to pay restitution for damages that did not arise from the offense of which she was convicted.
 {¶ 5} In her first assignment of error, defendant asserts the trial court erred in denying her motion to suppress evidence of the popcorn seized at her home. Defendant contends the initial search warrant executed at her home on March 2, 2002, during which the police discovered the popcorn, was invalid because the affidavit supporting the warrant did not contain sufficient information to justify a finding of probable cause to conduct the search. As a result, defendant argues, the second warrant that authorized the seizure of the popcorn also is invalid because it was issued based upon information discovered during the execution of the first, invalid warrant, and thus the evidence seized pursuant to the second warrant must be suppressed.
 {¶ 6} "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, `[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" State v. George
(1989), 45 Ohio St.3d 325, at paragraph one of the syllabus, quoting Illinois v. Gates (1983), 462 U.S. 213, 238-239,103 S.Ct. 2317, 2332. In reviewing the issuance of a search warrant, this court accords "great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." Id., paragraph two of the syllabus. This court's duty is "simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." Id.
 {¶ 7} In challenging the municipal judge's authorization of the March 2, 2002 warrant, defendant argues the confidential informant's reliability, or "veracity" and "basis of knowledge," was not established, and the municipal judge thus could not reasonably infer that evidence of the murder would be found in defendant's home at 1944 Dyer Road. Defendant contends the only information in the affidavit connecting 1944 Dyer Road to the murder investigation is the confidential informant's statement to a police detective that Conway III "occasionally stays overnight" at that address. Defendant asserts the statement is insufficient to establish probable cause for the search because the informant's bare conclusion does not indicate why the informant believed Conway III stayed at the premises, whether Conway III was staying there around the time of the shooting, or why there was any likelihood that evidence of the murder would be found at 1944 Dyer Road.
 {¶ 8} According to the affidavit Columbus Homicide Detective D. Michael Cone submitted in support of the March 2, 2002 search warrant, a large fight occurred at the Dockside Dolls Nightclub in Columbus at approximately 2:42 a.m. on January 19, 2002. During the fight, two individuals named in the affidavit were shot, resulting in the death of one of the individuals. Spent .45 caliber casings were found at the murder scene. (March 2, 2002 Cone Affidavit.)
 {¶ 9} In the ensuing investigation, detectives received (1) a Crime Stoppers tip that Conway III was a suspect in the shooting, and his brother, Jeffrey Conway, had been stabbed during the fight, and (2) information from witnesses at the scene that a white male had been stabbed during the fight and prior to the shooting. Id. In addition, Brian McWhorter told investigators he was in the parking lot at the Dockside Dolls Nightclub on the night of the shooting where he saw Conway III retrieve a handgun from a vehicle and walk toward the club. Id. McWhorter told the police he then heard shots being fired, saw Conway III lower his handgun to his side, and was told by Conway III to leave the scene. Id.
 {¶ 10} The affidavit then states a confidential informant told the police that after the shooting at the Dockside Dolls Nightclub, Conway III went to a certain restaurant where Conway III told the informant he had committed the shooting. Id. According to the attesting police officer, the same confidential informant advised the police that Conway III "occasionally stays overnight" at 1944 Dyer Road in Grove City. Id. Based upon the affidavit, the police requested and were granted authorization of a warrant to search the premises at 1944 Dyer Road for evidence relating to the murder that occurred at the Dockside Dolls Nightclub.
 {¶ 11} A review of the entire affidavit thus reveals that two other sources corroborated the confidential informant's information that implicated Conway III in the murder at the Dockside Dolls Nightclub, and those sources thereby established the reliability of the confidential informant. Specifically, the confidential informant's information that Conway III had confessed to committing the murder was corroborated by (1) the Crime Stoppers tip implicating Conway III in the murder, and (2) Brian McWhorter's statement that he witnessed Conway III commit the shooting that resulted in the murder. See Gates, at 242-243; State v. Ballard (Mar. 5, 1999), Hamilton App. No. C-980412 (noting that veracity of hearsay information can be established by corroboration).
 {¶ 12} The corroboration of a part of the confidential informant's information provides a reasonable basis to believe that the remaining information the informant supplied also was true. See Ballard; Gates, supra, at 244 (noting that "[b]ecause an informant is right about some things, he is more probably right about other facts," quoting Spinelli v.United States (1969), 393 U.S. 410, 427, 89 S.Ct. 584, 594). Thus, in reviewing the affidavit to determine if probable cause existed for the search at 1944 Dyer Road, the municipal judge was entitled to rely on the information the confidential informant provided that Conway III occasionally stayed overnight at 1944 Dyer Road.
 {¶ 13} Because Conway III had been implicated in the murder at the Dockside Dolls Nightclub, and the affidavit contains reliable information that he occasionally resided at the 1944 Dyer Road premises, a reasonable inference could be made that evidence connected with the murder, such as the murder weapon or ammunition, would be found at the premises where Conway III occasionally resided. See, e.g., State v. Cooey (1989),46 Ohio St.3d 20, 29 (stating that few places are more convenient for hiding the fruits or evidence of a crime than one's residence).
 {¶ 14} Given the required deference to the municipal judge's probable cause determination, we conclude the affidavit provided a substantial basis for the municipal judge to reasonably determine that probable cause existed to search the premises at 1944 Dyer Road for evidence connected to the murder at the Dockside Dolls Nightclub. Hence, the March 2, 2002 search warrant was valid. As a result, the law enforcement officers were on defendant's premises lawfully when they discovered the popcorn in her garage during execution of the search warrant. It therefore follows that the March 5, 2002 warrant to seize the popcorn was also valid, being based upon the officers' lawful observations during the execution of the first warrant. Accordingly, the trial court did not err in denying defendant's motion to suppress the evidence, and the first assignment of error is overruled.
 {¶ 15} We next address defendant's third assignment of error, in which defendant asserts the verdict of receiving stolen property is supported by insufficient evidence and is against the manifest weight of the evidence. Defendant contends the prosecution did not present proof beyond a reasonable doubt that she exercised dominion and control over the cartons of popcorn in her garage, or that she knew or had reasonable cause to believe the popcorn was stolen.
 {¶ 16} Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Thompkins (1997),78 Ohio St.3d 380, 386. We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus; Statev. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
 {¶ 17} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. Conley; Thompkins, at 387 ("When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 18} To prove defendant guilty of receiving stolen property, the prosecution was required to show that defendant received, retained, or disposed of property of another, knowing or having reasonable cause to believe that the property had been obtained through commission of a theft offense. R.C. 2913.51(A);State v. Cunningham, Franklin App. No. 01AP-1375, 2002-Ohio-4312, ¶ 7. A conviction for receiving stolen property may rest on constructive, rather than actual, possession of the stolen property. State v. Hankerson (1982), 70 Ohio St.2d 87,90-91, certiorari denied, 459 U.S. 870, 103 S.Ct. 155. Constructive possession exists when a person has dominion or control over that property, even though the property may not be within the person's immediate physical possession. Id., at syllabus; State v. Wolery (1976), 46 Ohio St.2d 316, 329, certiorari denied, 429 U.S. 932, 97 S.Ct. 339; State v.Teasley, Franklin App. No. 00AP-1322, 2002-Ohio-2333, ¶ 44. Where property is located within premises under one's control, constructive possession can be established by the fact that the person knew of the property's presence. See Hankerson, at 91.
 {¶ 19} Here, according to evidence presented at trial, defendant discovered the popcorn in her garage several weeks before the search of her home, which was about a week after Conway III had been arrested and jailed as a suspect in the Dockside Dolls Nightclub murder. Defendant testified that until the time of her brother's arrest, Conway III resided in her home with his girlfriend and two children, and he had full access to the home. Defendant admitted on cross-examination that although she had suspicions about the popcorn, she accepted Conway III's explanation that he had obtained it legally. Nevertheless, despite her professed acceptance of Conway III's legitimate ownership of the popcorn, defendant told the police during the initial search that the popcorn belonged to her father, who lived across the street and was a joint owner of the property at 1944 Dyer Road. Attempting to explain why she had lied to the police, defendant testified she did not tell the police the popcorn belonged to Conway III because she wanted to protect him from any further adverse publicity, and she did not want to bring any more "heat" on him after he had been arrested for murder. (Tr. 181, 195-196.)
 {¶ 20} Defendant asserts she had no control over the popcorn because it belonged to Conway III, who had full access to her home. However, defendant acknowledges that even though she could have either called the police to investigate it or hired a company to move it, she took no steps to have the popcorn removed after Conway III had been arrested and jailed. Defendant's dominion and control over the popcorn was established by its presence in her garage for several weeks and her knowledge that it was there. See Hankerson, at 91; Teasley, at ¶ 45 (stating a jury can reasonably infer a person has dominion and control over personal property in his or her own garage); State v.Mitchell (Aug. 26, 1996), Stark App. No. 1995 CA 00411 (determining a rational trier of fact could conclude a defendant had constructive possession over a stolen truck found dismantled in his garage).
 {¶ 21} Further, defendant's admission that she had suspicions regarding the popcorn, together with her false statement to the police that the popcorn belonged to her father, provide circumstantial evidence that she knew or had reasonable cause to believe the popcorn was stolen. See State v. McGuire (Nov. 13, 1997), Franklin App. No. 97APA02-180, citing State v. Walden
(Apr. 8, 1982), Franklin App. No. 81AP-335 (observing that a defendant's "guilty knowledge" may be shown by false or misleading statements the defendant makes to police officers to mislead the police or ward off suspicion).
 {¶ 22} Thus, when viewed in a light most favorable to the prosecution, the record contains sufficient evidence by which a reasonable juror could find not only that defendant had constructive possession over the stolen property, including her dominion and control over the property, but also that defendant knew or had reasonable cause to believe the property was stolen, all of which support her conviction for receiving stolen property. Moreover, contrary to defendant's contention, the verdict is not against the manifest weight of the evidence, as defendant's case presented, at best, conflicting evidence that the jury properly could and did resolve contrary to defendant. Accordingly, defendant's third assignment of error is overruled.
 {¶ 23} In her second assignment of error, defendant asserts the trial court erred in rejecting defendant's proffered jury instructions for the offense of receiving stolen property. Defendant contends the instructions the trial court gave were "problematic" because they did not define "received, retained, or disposed of," and they permitted the jury to find defendant guilty of receiving stolen property merely because she was aware the property at issue was likely stolen. Defendant contends that as a result of the court's failure to instruct the jury on possession and control, the instructions to the jury on the crime of receiving stolen property were legally inadequate and thus mandate reversal of defendant's conviction.
 {¶ 24} A trial court has the responsibility to give all jury instructions that are relevant and necessary for the jury to weigh the evidence and make findings of fact. State v. Moody
(Mar. 13, 2001), Franklin App. No. 98AP-1371, citing State v.Comen (1990), 50 Ohio St.3d 206, paragraph two of the syllabus. The trial court's instructions should outline the issues, state the applicable principles of law, and clarify the jury's role in the case. Moody, supra, citing Bahm v. Pittsburgh Lake ErieRd. Co. (1966), 6 Ohio St.2d 192. "A jury instruction is proper when it adequately informs the jury of the law." Moody, supra, citing Linden v. Bates Truck Lines, Inc. (1982),4 Ohio App.3d 178. We review the trial court's refusal to give a requested instruction to determine if the decision constituted an abuse of discretion under the facts and circumstances of the case. Statev. Smith (Apr. 2, 2002), Franklin App. No. 01AP-848, citingState v. Wolons (1989), 44 Ohio St.3d 64, 68.
 {¶ 25} Here, in accordance with R.C. 2913.51(A), the trial court instructed the jury, consistent with the elements of receiving stolen property, that in order to convict defendant of receiving stolen property, the jury must find that defendant (1) received, retained or disposed of property of another, and (2) knew or had reasonable cause to believe the property had been obtained through the commission of a theft offense. SeeTeasley, at ¶ 63. The court then defined the term "property" and explained the element "knew or had reasonable cause to believe that the property had been obtained through the commission of a theft offense." The court informed the jurors they were "to apply the everyday common English meaning" to the remaining words. (Tr. 325.)
 {¶ 26} Defendant's contention is without merit insofar as she asserts the trial court should have additionally instructed the jury it could not find that defendant "received, retained or disposed of" the stolen property unless the jury found defendant had dominion or control over the property as would establish her possession of the property. The Ohio Supreme Court has advised trial courts to "limit definitions, where possible, to those definitions provided by the legislature in order to avoid unnecessary confusion and needless appellate challenges." Statev. Jacobs (1995), 108 Ohio App.3d 328, 334, quoting State v.Williams (1988), 38 Ohio St.3d 346, 356, fn. 14, certiorari denied (1989), 489 U.S. 1040, 109 S.Ct. 1176. The trial court's instructions to the jury in defendant's trial adequately informed the jury of the law concerning receiving stolen property and additional, special instructions were not required under the facts of this case. See Jacobs, supra (determining that a special instruction is not required in every case involving receiving stolen property).
 {¶ 27} Unlike State v. Jackson (1984), 20 Ohio App.3d 240
and Wolery, upon which defendant relies, undisputed evidence was presented that defendant had constructive possession of, and therefore "retained," the stolen property for several weeks, thus establishing the first element of the offense. The central issue at trial was whether she knew, or had reasonable cause to believe, the property was stolen. Defendant suffered no prejudice as a result of the trial court's refusal to issue defendant's proposed instructions concerning the element of "receive, retain or dispose of" stolen property.
 {¶ 28} Accordingly, the trial court did not abuse its discretion in refusing to give defendant's proffered jury instructions where it adequately informed the jury of the law regarding receiving stolen property and properly instructed the jury on the essential elements of the offense. Defendant's second assignment of error is thus overruled.
 {¶ 29} In her fourth assignment of error, defendant asserts the trial court erred in ordering her to pay restitution to the victim, ConAgra Foods ("ConAgra"). Defendant contends restitution was improper in this case because (1) the record lacks evidence she was involved in the theft of the popcorn, and (2) ConAgra, not defendant, decided to destroy the popcorn.
 {¶ 30} In imposing a sentence on an offender for a felony theft offense, including the offense of receiving stolen property, R.C. 2913.01(K)(1), the trial court may require the offender to make restitution for all or part of the victim's economic loss, including property damage, caused by the offender's commission of the offense. R.C. 2929.11(A); R.C.2929.18(A)(1). Economic loss is defined as "any economic detriment suffered by a victim as a result of the commission of a felony[,]" including any property loss incurred as a result of the commission of the offense. Former R.C. 2929.01(M). "Due process requires that the amount of restitution bear a reasonable relationship to the loss suffered." State v. Hughes (Dec. 27, 2001), Franklin App. No. 01AP-196; Findlay v. Coy (1991),76 Ohio App.3d 189, 195, citing State v. Williams (1986),34 Ohio App.3d 33.
 {¶ 31} While no evidence was presented that defendant was involved in the actual theft of the popcorn, the record establishes the stolen property was retained in defendant's garage, with her acquiescence, for a period of approximately three weeks after its theft from ConAgra. The record reflects that when ConAgra recovered the popcorn after the police seized it, blood was discovered on several of the cases of popcorn. According to the testimony of ConAgra's representative at trial, the possibility that other cases of the popcorn might be tainted, together with the length of time the product was out of ConAgra's control and the unknown conditions under which it was held, led to ConAgra's decision to destroy all of the popcorn as a safety precaution.
 {¶ 32} Under the circumstances, ConAgra's decision to destroy all the popcorn was prudent, reasonable, and appropriate. Although defendant did not participate in the decision to destroy the popcorn, her conduct in allowing the popcorn to remain in her garage for over three weeks substantially contributed to ConAgra's decision to destroy the popcorn and its resultant economic loss.
 {¶ 33} Moreover, the amount ordered to be paid as restitution did not exceed the actual loss suffered. Indeed, the $27,840 defendant was ordered to pay as restitution was far less than the approximately $50,000 undisputed value of the popcorn. Thus, the trial court's order that defendant pay an amount of restitution less than the actual value of the popcorn did not exceed the amount permitted by statute. See R.C. 2929.18(A)(1).
 {¶ 34} Defendant nonetheless argues that the restitution order is inappropriate because it is contrary to the goals of community control. A trial court has discretion to determine the most effective way to comply with the purposes and principles of sentencing, and we will not disturb its sentencing decision absent an abuse of that discretion. R.C. 2929.12(A); State v.O'Dell (1989), 45 Ohio St.3d 140. See, also, State v. Turner, Cuyahoga App. No. 82890, 2004-Ohio-485, ¶ 8 (stating that "[w]e review a trial court's imposition of community control for compliance with the statutory sentencing scheme and the imposition of additional conditions pursuant to R.C. 2929.15[A] for an abuse of discretion"). A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing, which are to protect the public from future crime by the offender and others, and to punish the offender. R.C.2929.11(A). To achieve these purposes, the court may consider the need for (1) incapacitating the prisoner, (2) deterring the offender and others from future crime, (3) rehabilitating the offender, and (4) making restitution to the victim of the offense. Id.
 {¶ 35} Unless precluded or otherwise directed by law, a sentencing court may impose community control sanctions in lieu of a prison sentence and has discretion to decide which community control sanctions to select as part of an offender's sentencing. R.C. 2929.13(B)(2)(b) and 2929.15; Turner, at ¶ 9, 10. See R.C.2929.16 (residential sanctions), R.C. 2929.17 (nonresidential sanctions), and R.C. 2929.18 (financial sanctions). Restitution is one of the financial sanctions that may be imposed as part of a community control sanction. See R.C. 2929.15(A)(1) and2929.18(A)(1). See, also, State v. Mullins (Nov. 4, 1999), Cuyahoga App. No. 74861 (determining a trial court did not abuse its discretion in sentencing the defendant to community control for five years and ordering the defendant to pay restitution, fines, and various costs), and State v. Sturgeon (2000),138 Ohio App.3d 882, 885 (noting that a court in sentencing a felony offender may impose one or more community control conditions, including residential, nonresidential and financial sanctions).
 {¶ 36} Accordingly, the restitution the trial court ordered not only complies with the statutory mandates, it satisfies due process as bearing a reasonable relationship to the economic loss ConAgra suffered. R.C. 2929.18(A)(1); Findlay; Williams;Hughes, supra. The trial court did not abuse its discretion in ordering that defendant pay restitution in addition to the five-year community control/basic supervision sanction. Defendant's fourth assignment of error is overruled.
 {¶ 37} Having overruled all of defendant's assignments of error, we affirm the trial court's judgment of sentence in this case.
Judgment affirmed.
Brown and Watson, JJ., concur.