OPINION
{¶ 1} Defendant-appellant, Jennifer T. Conway ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas revoking her probation for failure to pay restitution.
 {¶ 2} The following summary of facts surrounding appellant's conviction is taken from this court's decision, State v.Conway, Franklin App. No. 03AP-585, 2004-Ohio-1222 ("ConwayI"), which concerned appellant's appeal as of right following her conviction. On March 2, 2002, while executing a search warrant at appellant's residence to obtain evidence linking appellant's brother to a murder and felonious assault, law enforcement officials discovered numerous cases of Act II brand microwave popcorn in appellant's two-car garage. Thereafter, the popcorn, which totaled 1,910 cases, weighed over 40,000 pounds, and had a retail value of approximately $50,000, was seized.
 {¶ 3} On March 20, 2002, appellant was indicted by the Franklin County Grand Jury on one count of receiving stolen property, a fourth-degree felony, as defined in R.C. 2913.51. Following a jury trial, the jury found appellant guilty of receiving stolen property as indicted. On May 9, 2003, after ordering a pre-sentence investigation, the trial court imposed five years of community control, and, as one condition of her community control, appellant was ordered to pay $27,840 in restitution to ConAgra, the manufacturer of the popcorn and from whom the popcorn was stolen. This court affirmed appellant's conviction and sentence in Conway I.
 {¶ 4} Appellant moved to reduce the restitution order, however, her motion was denied. This court affirmed the trial court's judgment denying appellant's motion to modify the restitution order in State v. Conway, Franklin App. No. 03AP-1120, 2004-Ohio-5067 ("Conway II").
 {¶ 5} At appellant's first probation revocation hearing in August 2003, issues regarding appellant's restitution order were still pending on appeal. Therefore, the trial court continued the disposition of the matter.
 {¶ 6} On September 24, 2004, the trial court conducted a probation revocation hearing, and accepted a stipulation that appellant failed to make regular restitution payments. The probation department determined that $27,685 remained on the restitution order. The trial court restored appellant to community control with the same conditions, and notified her that any further community control violations could result in a 12-month prison term.
 {¶ 7} In February 2005, the probation department requested that appellant's community control be revoked, alleging that appellant failed to make restitution payments, failed to provide employment verification, and was convicted of an O.M.V.I in January 2005. On February 25, 2005, a probable cause hearing on the motion to revoke probation was held, and it was stipulated that probable cause existed for the above-stated violations.
 {¶ 8} The trial court held the revocation hearing on March 11, 2005. At the hearing, the defense stipulated to the three community control violations, but clarified that appellant had made various partial payments from October 2003 to February 2005, totaling $325. After finding that appellant failed to make restitution, the trial court revoked appellant's community control, and sentenced her to a six-month prison term, and again ordered appellant to pay restitution in the amount of $27,840, to be offset by any partial payments. It is from this judgment that appellant appeals.
 {¶ 9} On appeal, appellant raises the following assignment of error:
The trial court erred in revoking Appellant's probation when there was insufficient proof to establish that she was able to pay the restitution ordered by the court.
 {¶ 10} We take this opportunity to note that, throughout appellant's briefs, there are numerous arguments attacking the validity of the restitution order. However, this court, in bothConway I and Conway II, has upheld the validity of the restitution order, therefore, such issue is barred by res judicata. See State v. Perry (1967), 10 Ohio St.2d 175. Consequently, our focus in this opinion will remain on the trial court's decision to revoke appellant's community control for failure to comply with the conditions of her probation, i.e., the failure to pay court-ordered restitution.
 {¶ 11} A trial court may impose restitution as a condition of probation. This court has recognized that it is within the trial court's discretion to revoke probation where the probationer has failed to make restitution. State v. Hudson (Nov. 14, 2000), Franklin App. No. 00AP-236, citing State v. Woods (1982),7 Ohio App.3d 81. An abuse of discretion connotes more than a mere error in judgment; it signifies an attitude on the part of the trial court that is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 12} It is well-settled that a court cannot revoke probation for failure to pay restitution where there is no evidence that the probationer had the ability to pay. Hudson,
supra; State v. Kaine (Nov. 18, 1999), Cuyahoga App. No. 75159;State v. Umphries (July 9, 1998), Pickaway App. No. 97CA45. In other words, there must be evidence that the failure to pay or to obtain employment was willful or intentional. As set forth by the United States Supreme Court in Bearden v. Georgia (1983),461 U.S. 660, 672-674:
* * * [I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. * * *
* * * The State argues that the sentencing court determined that the petitioner was no longer a good probation risk. In the absence of a determination that the petitioner did not make sufficient bona fide efforts to pay or to obtain employment in order to pay, we cannot read the opinion of the sentencing court as reflecting such a finding. * * *
 {¶ 13} In Bearden, the defendant pled guilty to burglary and receiving stolen property, and was sentenced to probation on the condition that he pay a $500 fine and $250 in restitution. Bearden borrowed money to pay the first $200 of his restitution, but lost his job and was unable to find employment. The United States Supreme Court held that the trial court erred in automatically revoking probation without determining that the probationer had not made sufficient bona fide efforts to pay or that other forms of adequate punishment existed.
 {¶ 14} In the case sub judice, however, the record contains sufficient evidence to support a finding that appellant's failure to pay was due to her lack of a bona fide effort to make restitution.
 {¶ 15} At the first hearing on this matter in August 2003, appellant testified that she was unable to procure employment for several months, but was not aware of the reasons why. She testified that she was told by one potential employer that it was because of the felony conviction on her record, and the publicity surrounding her brother's case. Appellant also testified that she had past due phone bills, electric bills, and gas bills, in the approximate amounts of $1,000, $5,600, and $5,600, respectively. Appellant stated that she had a monthly mortgage in the amount of approximately $1,000 that is paid by her roommate and her mother. Appellant stated that, despite her car being repossessed, "[i]t's not a problem for me finding employment[,]" and "I can get a ride wherever I need to go." (Aug. 22, 2003 Tr. at 19, 22.) At the time of the hearing in August 2003, appellant had recently obtained part-time employment at the Convention Center in Columbus, Ohio.
 {¶ 16} The trial court stated at this hearing:
* * * We're going to continue any disposition on all of this for six months. We're going to come back and I'm going to see where we are at that point.
Let me state this for the record: Your case is on appeal. I am a humble servant of the Tenth District. Whatever they tell me I'm going to do. * * *
Here's the situation I am painfully trying to avoid: You're on paper to me, I think, for five years. You owe $27,000 plus dollars. That is a lot of money, but it's not some insurmountable figure. People buy automobiles and pay them off in five years at X amount per month. I don't even think we're charging you any interest here. The farther we go without any payments, the larger the payment gets each month.
I do not want to get four and a half years down the road and you have not paid anything because then it's going to be insurmountable and them I'm going to think to myself she didn't pay anything back, I probably need to punish her in some other fashion because she's really received no punishment through my sentence. I don't want to do that.
* * *
* * * I'm bending over backwards here trying to be reasonable about the whole thing, but, I know a man who came to this country in the late '60's, he had literally a nickel in his pocket, he didn't speak a word of English. One of his children now is a medical doctor, the other is a lawyer in one of the major firms downtown because he worked two, three, four jobs at a time sleeping two and three hours on some days so he could put his kids through school.
Now, I think putting your kid through school is very honorable. Personally I would be more highly motivated not to go to prison. To me, that would be more important than putting my kids through school. So, I don't care if it takes one job, two jobs, three jobs, four jobs, we're going to get on track here and we're going to start making these payments. That's the bottom line. We're going to come back in six months and we're going to assess where we are and where we've gotten to.
(Id. at 23-26.)
 {¶ 17} A little over a year later, at the second revocation hearing on September 24, 2004, appellant admitted that she violated the conditions of her community control, namely that she had not paid the restitution. The trial court restored her to community control, and informed her that, if she failed to make restitution, she would be sentenced to prison. The following exchange took place:
[THE COURT:] All this Court has ever asked you to do is to start making restitution. That's it. You're either going to do that or I'm going to send you to prison. If you violate your probation, in light of the fact that you owe $27,000 I think, that a maximum sentence of 12 months is what I'm going to impose.
* * *
THE COURT: When you started this monthly payment was somewhere around 3- or $400?
[Appellant]: It was $500.
THE COURT: It's like buying a real expensive car.
[Appellant]: When you have a felony on your record and you can't get a good job it's hard to make a $500 monthly payment.
THE COURT: Miss Conway, I didn't make your bed. You made your bed. You're laying in it now.
(Sept. 24, 2004 Tr. at 3-4.)
 {¶ 18} Five months later, the probation department requested that appellant's probation be revoked, and listed three violations: (1) she failed to make monthly payments toward restitution as ordered by the court; (2) she failed to provide verification of employment since December 2004; and (3) she was convicted of an O.M.V.I. on January 27, 2005. On February 25, 2005, appellant appeared before the trial court, and the court accepted the stipulation of probable cause concerning appellant's alleged violations of the conditions of her probation. Appellant informed the trial court that she was turning herself in on a misdemeanor case, and that she would be spending three days in jail instead of going to Maryhaven for the O.M.V.I. conviction. The following exchange took place:
THE COURT: Excuse me. When did that happen?
[Appellant]: New Year's Day.
* * *
THE COURT: * * * I thought you didn't live on a bus line and that meant you can't get work, yet you're out apparently under the influence driving a car.
The other thing that perplexes me is some lawyer has been calling, talking to my bailiff, talking about how he might be retained in this case. And I mean this is your business, but if you have money to pay a lawyer, why would you not be spending that money to make restitution?
(Feb. 25, 2005 Tr. at 4.)
 {¶ 19} After appellant's trial counsel expressed concern about appellant answering the question because another hearing was being scheduled, the court stated:
* * * To tell you the truth, I just wanted to let her know my thinking as opposed to hearing anything from her.
(Id. at 5.)
 {¶ 20} Finally, on March 11, 2005, at the last hearing regarding appellant's probation, appellant again stipulated to the allegations, clarifying that various partial payments were made toward restitution. Appellant's trial counsel indicated that appellant had paid the following: $40 on September 2, 2004; $10 on September 16, 2004; $40 on October 19, 2004; $40 on November 18, 2004; nothing in December 2004; and two payments of $30 and $40 in February 2005. Additionally, appellant had paid $15 on October 20, 2003; $10 on January 13, 2004; $20 on April 13, 2004; $20 on July 13, 2004; and $60 on November 3, 2003. Thus, from the time of her original sentencing on May 9, 2003, until the last revocation hearing on March 11, 2005, appellant paid a total of $325 toward her restitution.
 {¶ 21} At the March 11, 2005 hearing, appellant stated:
* * * I just want to say that I'm trying to do everything that I can, and I tried to sell my house ever since you said that is what I should try to do. It's been on the market. I'm doing everything I can. I was left with a house, a thousand-dollar payment. My name is on the house, but the house was bought for my brother. Just my name happened to be — it was his house, and when he left I am left with all of the bills, and I'm trying to get myself back together from the situation that's not my fault, that I had nothing to do with.
(Mar. 11, 2005 Tr. at 9-10.)
 {¶ 22} The court stated the following:
* * * When you started out this was like a hefty car payment and you didn't do a thing for how long, a year, two years? And, of course, the longer you wait the bigger the monthly payment gets. If I were convinced you weren't able to work, if I wereconvinced that you were putting forth the best effort you could,I'm a reasonable person. Maybe now it's dawned on you what's coming and you've tried to change your ways, but I'm convincedin the beginning of this whole thing, and I don't know if it'sbecause you were getting legal advice, not from Mr. Mulrane, youwere basically saying: I'm not going to have to do this and I'mnot doing it, and that's the reason it went from 3- or 400 up to6- or 700 a month because you didn't do anything.
(Emphasis added. Id. at 11-12.)
 {¶ 23} Thereafter, the trial court revoked appellant's probation and ordered restitution in the amount of $27,840 to be offset by any partial payments.
 {¶ 24} The record also contains evidence that the probation department provided appellant with information about upcoming job fairs and lists of companies that hire ex-offenders as early as July 2003. While appellant did obtain part-time employment in August 2003, her probation officer noted that appellant did not indicate any plans to get a second job. In January 2004, appellant began working full-time at M.R.S. Associates doing collections work, but despite telling her probation officer that she would pay $300 toward her restitution on March 12, 2004, appellant did not make this payment. Thereafter, in April 2004, appellant informed her probation officer that she was fired from her job at M.R.S. due to attendance problems because her car kept breaking down. In May 2004, appellant's probation officer noted that appellant informed her that she was back on the schedule at Aramark, however, there was no work available at that time. In June 2004, appellant told her probation officer that she was not employed, and may get a job at the "Dairy Twist." In July 2004, appellant reported that she was working on a part-time basis at Aramark again.
 {¶ 25} We find that the record contains sufficient evidence to support a finding that appellant did not make a bona fide effort to pay her restitution. Unlike the situation in Bearden,
the trial court here clearly inquired, as early as the first revocation hearing, as to the reasons for appellant's failure to pay restitution. After reviewing the evidence, and the fact that appellant paid only $325 from May 2003 until March 2005 toward restitution, the trial court found that appellant had not demonstrated sufficient efforts to comply with the terms of her probation. The revocation took place at the third hearing on the probation violations, more than a year and a half after appellant had been provided with lists of employers that hire ex-offenders and information regarding an upcoming job fair. While appellant testified at the final hearing about her bills and her house payment, she testified previously that a roommate paid half of the house payment, and appellant's mother paid the other half of the house payment. In just short of two years, appellant paid only $325 toward the $27,840 restitution order. Appellant maintained only sporadic part-time employment during this time, despite her testimony that transportation was not a problem for her, and information about employment opportunities given to her by the probation department.
 {¶ 26} After reviewing the record, we find that it clearly supports the trial court's finding that appellant had not demonstrated sufficient efforts to comply with the terms of her probation, specifically, to pay restitution. Thus, the trial court did not abuse its discretion in revoking appellant's probation for failure to pay restitution. Accordingly, appellant's single assignment of error is overruled.
 {¶ 27} For the foregoing reasons, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
Klatt, P.J., and Petree, J., concur.