[Cite as *State v. Oggs*, 2018-Ohio-3577.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 17AP-900 |
| | | (C.P.C. No. 17CR-297) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ericka M. Oggs, | : | |
| Defendant-Appellant. | : | |

---

# D E C I S I O N

### Rendered on September 6, 2018

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee. **Argued:** *Seth L. Gilbert.*

**On brief:** *Todd W. Barstow*, for appellant. **Argued:** *Todd W. Barstow.*

---

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Ericka M. Oggs, appeals from a judgment entry of the Franklin County Court of Common Pleas finding her guilty, pursuant to a bench trial, of two counts of receiving stolen property and one count of theft from a person in a protected class. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} By indictment filed January 13, 2017, plaintiff-appellee, State of Ohio, charged Oggs with five counts of receiving stolen property in violation of R.C. 2913.51, felonies of the fifth degree; and one count of theft from a person in a protected class in violation of R.C. 2913.02, a felony of the fifth degree. Oggs entered a plea of not guilty.

{¶ 3}    Having waived her right to a jury trial, the matter proceeded to a bench trial on November 20, 2017. During the trial, Carol Heller testified that her 72-year-old husband, Stephen Heller, has progressive multiple sclerosis rendering him unable to walk and leaving him with cognitive disabilities such that he is unable to be left unattended.  For the last six or seven years, Carol has used home health aides to assist in Stephen's care, including tasks such as moving Stephen from one place to another and help with toileting, dressing, and bathing.  The Hellers used a placement agency called Alta Home Health Care, LLC to find home health aides.  Through Alta Home Health Care, Oggs was placed in the Hellers' home to assist in Stephen's care beginning in spring 2016.

{¶ 4}    During a typical shift at the Hellers' home, Oggs would work from 3:00 p.m. to 5:00 p.m. as well as a few nights a week from 7:00 p.m. to 9:00 p.m.  Among other responsibilities, Oggs would help Stephen use his iPad by typing in the passcode for him.

{¶ 5}    In September 2016, Carol informed Alta Home Health Care that she had grown dissatisfied with its services and planned to switch to another agency called EmanciCare.  Carol told the Alta Home Health Care employee that her dissatisfaction with Oggs, personally, motivated her to change to a new agency.

{¶ 6}    Subsequently, on September 23, 2016, Carol received a voicemail message from Alta Home Health Care informing her that Oggs no longer wanted to work with Stephen.  The previous night, Oggs had appeared for her 3:00 p.m. to 5:00 p.m. shift but, after telling Carol she was not feeling well, Oggs arranged for another employee to cover her at the Hellers' home for the 7:00 p.m. to 9:00 p.m. shift.

{¶ 7}    Close to that same time in September 2016, Carol said she received a phone call from Chase bank informing her of possible fraudulent activity on the joint checking account she shared with Stephen.  The purchases were made with Stephen's debit card which would require the use of a PIN, but the PIN for Stephen's debit card was the same as the passcode for his iPad.  Carol testified that Stephen kept his debit card for that account in a bowl in the kitchen.  Further, Carol testified Stephen's debit card only left the house when he was out with his son.  Carol said the unauthorized purchases from the joint checking account included $232.66 at Speedway and $272.91 at Meijer.  The Meijer purchase occurred in Canal Winchester, and Carol testified she has never been to Canal

Winchester. Carol said she never gave Oggs permission to make these purchases on her or Stephen's behalf.

{¶ 8} Additionally, Carol had a Capital One credit card that she thought she kept in the same bowl as Stephen's debit card. In September 2016, this card was used for purchases of $40.11 at Speedway; two vending machine purchases of $3.30 and $1.00 in Warren, Ohio; a Walgreens purchase of $19.38; and a United Dairy Farmers purchase of $8.98. Carol testified that she did not authorize any of these purchases.

{¶ 9} Upon discovering the unauthorized purchases, Carol contacted the police. Carol told the responding officer that she suspected Oggs in making the purchases. Carol said that the person she spoke to on the phone from Capital One told her that someone had been making inquiries on Carol's account and that the phone number associated with those inquiries was Oggs' phone number. Additionally, Carol told police that the timing of Oggs' decision to quit working for Stephen made Carol suspicious.

{¶ 10} A detective eventually emailed Carol a series of notes obtained during the investigation purportedly signed by Carol giving Oggs permission to use both the debit card and the credit card. Carol denied writing the notes and testified that because she is a former English teacher, she would never make the grammatical errors contained in the notes.

{¶ 11} When a detective interviewed Oggs, Oggs said Carol had given her authorization to make the purchases in question. Oggs additionally told the detective that Carol wrote the notes giving her permission to use the cards. While making the debit card purchase at Meijer, an asset protection officer at Meijer detained Oggs on suspicion of attempting to shoplift approximately $620 of merchandise. Oggs told the detective she had no intention of stealing the merchandise.

{¶ 12} At the conclusion of the evidence, the trial court found Oggs guilty of two counts of receiving stolen property, one count corresponding to each of the two cards, and one count of theft of a person in a protected class. The trial court found Oggs not guilty on the remaining three counts of receiving stolen property.

{¶ 13} The trial court proceeded immediately to sentencing and sentenced Oggs to one year of community control. The trial court journalized Oggs' convictions and sentence in a November 27, 2017 judgment entry. Oggs timely appeals.

## II.  Assignment of Error

{¶ 14} Oggs assigns the following error for our review:

> The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding her guilty of theft and receiving stolen property as those verdicts were not supported by sufficient evidence and were also against the manifest weight of the evidence.

## III.  Analysis

{¶ 15} In her sole assignment of error, Oggs argues her convictions for receiving stolen property and theft from a person in a protected class were not supported by sufficient evidence and were against the manifest weight of the evidence.

### A.  Sufficiency of the Evidence

{¶ 16} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 17} Oggs was convicted of two counts of receiving stolen property and one count of theft from a person in a protected class. To convict a defendant of receiving stolen property, the state is required to prove that the defendant received, retained or disposed of property of another, knowing or having reasonable cause to believe that the property had been obtained through the commission of a theft offense. R.C. 2913.51(A); *State v. Conway*, 10th Dist. No. 03AP-585, 2004-Ohio-1222, ¶ 18, citing *State v. Cunningham*, 10th Dist. No. 01AP-1375, 2002-Ohio-4312, ¶ 7. "[I]f the property involved is any of the property listed in [R.C. 2913.71], receiving stolen property is a felony of the fifth degree." R.C. 2913.51(C). One of the items listed in R.C. 2913.71 is a "credit card." R.C. 2913.71(A).

{¶ 18} Further, R.C. 2913.02 provides, in pertinent part:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> (1) Without the consent of the owner or person authorized to give consent;
>
> (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
>
> (3) By deception[.]

R.C. 2913.02(A)(1) through (3). The statute further provides that "if the victim of the offense is an elderly person [or] disabled adult * * * a violation of this section is theft from a person in a protected class" and is a fifth-degree felony. R.C. 2913.02(B)(3).

{¶ 19} Though Oggs captions her argument as a challenge to both the sufficiency and manifest weight of the evidence, her entire argument relates to the credibility of the witnesses. However, "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime." *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4. Here, the parties do not dispute that Oggs used the credit card and the debit card. The only contested issue at trial was whether Oggs received the cards through the commission of a theft offense. Carol testified she did not give Oggs permission or authorization to use the cards. Oggs does not raise any arguments related to the state's failure to prove any specific element of any of the crimes charged but instead argues the evidence the state relied upon to prove Oggs did not have authorization to use the cards lacked credibility. Thus, we address Oggs' argument regarding the credibility of the witnesses in our analysis of the manifest weight of the evidence.

## B. Manifest Weight of the Evidence

{¶ 20} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *Thompkins* at 387. "When a court of appeals reverses a

judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a ' "thirteenth juror" ' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).  Determinations of credibility and weight of the testimony are primarily for the trier of fact.  *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.  Thus, the jury may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony."  *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 21} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387.  Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' "  *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 22} Oggs argues her convictions are against the manifest weight of the evidence because Carol's testimony was not credible.  More specifically, Oggs asserts that her consistent statements to law enforcement that Carol had authorized her use of the cards to make certain purchases were more credible than Carol's testimony.  Initially, we note the presence of conflicting evidence does not render a verdict against the manifest weight of the evidence.  *State v. Lindsey*, 10th Dist. No. 14AP-751, 2015-Ohio-2169, ¶ 43, citing *Raver* at ¶ 21.  Additionally, a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version.  *Lindsey* at ¶ 43, citing *State v. Gale*, 10th Dist. No. 05AP-708, 2006-Ohio-1523, ¶ 19.  As we noted above, the trier of fact remains free to believe "all, part, or none of a witness's testimony." *Raver* at ¶ 21.  Despite Oggs' attempts to characterize Carol as a disgruntled and vindictive former client of the home healthcare agency, Carol consistently maintained to law enforcement and at trial that she did not authorize Oggs to use the credit card or the debit

card.  Thus, in light of the evidence discussed above, as well as the record in its entirety, we do not find the trial court clearly lost its way in concluding Oggs did not have authorization to use the credit card or debit card.

{¶ 23} For these reasons, we conclude the sufficiency and manifest weight of the evidence support Oggs' convictions.  Accordingly, we overrule Oggs' sole assignment of error.

## IV.    Disposition

{¶ 24} Based on the foregoing reasons, the sufficiency of the evidence and the manifest weight of the evidence support Oggs' convictions for receiving stolen property and theft from a person in a protected class.  Having overruled Oggs' sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN, P.J., and BRUNNER, J., concur.

—————————————