OPINION
{¶ 1} Defendant-appellant, Ronald L. Zachery, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty, pursuant to a jury trial, of murder with a firearm specification in violation of R.C. 2903.02 and 2941.145, carrying a concealed weapon in violation of R.C. 2923.12, and illegal possession of a firearm in a liquor permit premises in violation of R.C. 2923.121. Because defendant's conviction is *Page 2 
not based on improper hearsay evidence, no prejudicial prosecutorial misconduct occurred, and defendant's trial counsel was not ineffective, we affirm.
 {¶ 2} On February 18, 2001, Soyini McGraw was shot and killed at the Sunrise Bar in Columbus, Ohio where he had gone with several friends and family members to play pool. When McGraw approached one of the pool tables, he and another bar patron, later identified as defendant, exchanged words. A fight erupted, and McGraw pinned defendant on the pool table. Members of McGraw's group, along with defendant's brother and friends, intervened and separated the two men. In the course of the scuffle, a single gunshot was fired, struck McGraw, and fatally wounded him. The bar cleared of people.
 {¶ 3} Columbus Police Officer Jeff Vance was patrolling outside when he noticed people running from the bar. He stopped, and a bystander told him "[t]hose two people shot him." (Tr. 197.) Vance apprehended both individuals, later identified as Aaron Walker and defendant's brother, Aaron Zachery, as well as another suspect, William Thomas. Police officers interviewed other witnesses at the scene, but no witness identified any of the three suspects as the shooter. Although investigation revealed that no one actually saw who shot McGraw, witnesses saw defendant holding a gun.
 {¶ 4} By indictment filed February 1, 2007, defendant was charged with one count of murder, one count of carrying a concealed weapon, and one count of illegal possession of a firearm inside a liquor permit premises. After a six-day jury trial, defendant was found guilty on all three counts, and the trial court sentenced defendant accordingly.
 {¶ 5} Defendant appeals, assigning three errors: *Page 3 
 ASSIGNMENT OF ERROR I
 IMPROPER ADMISSION OF HEARSAY ELICITED BY THE PROSECUTOR VIOLATED APPELLANT'S CONSTITUTIONAL RIGHT TO CONFRONTATION PROTECTED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION TEN OF THE CONSTITUTION OF THE STATE OF OHIO.
 ASSIGNMENT OF ERROR II
 THE PROSECUTOR ENGAGED IN A COURSE OF CONDUCT THAT TAKEN AS A WHOLE CONSTITUTE[D] PROSECUTORIAL MISCONDUCT THAT RESULTED IN PREJUDICE TO APPELLANT.
 ASSIGNMENT OF ERROR III
 TRIAL COUNSEL'S FAILURE TO OBJECT TO IMPROPER TESTIMONY AND ACTIONS OF PROSECUTORIAL MISCONDUCT, TAKEN AS A WHOLE, CONSTITUTED A DENIAL OF APPELLANT'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
I. First Assignment of Error — Hearsay Evidence
 {¶ 6} In his first assignment of error, defendant contends the prosecution improperly elicited hearsay evidence. Defendant asserts the evidence was prejudicial because it eliminated any theory that someone other than defendant fired a shot on the night of the murder.
 {¶ 7} At issue is the testimony of two state witnesses, Columbus Police Officer James L. Gravett and Detective Robert J. Connor, Jr. Gravett testified that none of the witnesses interviewed on the night of the shooting identified the three detained suspects as the shooter. Connor testified that Johana Lightfoot identified Aaron Zachery through photo array identification. Defendant contends his constitutional right to confront the witnesses against him was violated in two separate ways. Initially, he asserts he was not *Page 4 
able to cross-examine the witnesses Gravett interviewed at the time of the shooting. In addition, he contends he was unable to cross-examine Lightfoot because Connor's testimony concerning Lightfoot's identification occurred after Lightfoot testified.
 {¶ 8} Defendant's trial counsel did not object to either line of questioning, waiving all but plain error. "Typically, if a party forfeits an objection in the trial court, reviewing courts may notice only `[p]lain errors or defects affecting substantial rights.'"State v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, at ¶ 15, citing Crim. R. 52(B). Crim. R. 52(B) places three limits on reviewing courts for correcting plain error: the trial court must have deviated from the legal rule, the deviation must be a plain, or obvious, defect in the proceedings, and the deviation must have affected substantial rights. Id., citing State v. Barnes (2002), 94 Ohio St.3d 21, 27. Courts are to notice plain error "only to prevent a manifest miscarriage of justice."State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. The burden of demonstrating plain error is on the party asserting it.Payne, supra, citing State v. Jester (1987), 32 Ohio St.3d 147, 150. A reversal is warranted if the party can prove that the outcome "clearly would have been different absent the error." State v. Hill (2001),92 Ohio St.3d 191, 203.
 {¶ 9} Initially, we note the police officers' statements may not be hearsay. Connor's testimony arguably may be admissible pursuant to Evid. R. 801(D)(1)(c)'s hearsay exception, as Lightfoot testified. Similarly, Gravett's testimony regarding the negative identification of the three suspects arguably may be admissible as a statement offered to explain the conduct of police while investigating a crime.
 {¶ 10} We, however, need not determine whether the contested testimony was properly admitted, as defendant fails to demonstrate plain error. Although Gravett's *Page 5 
testimony excluded the possibility that one of the three suspects arrested the night of the shooting was the shooter, it did not directly implicate defendant. In addition, other witnesses testified to seeing defendant with a gun immediately after other bar patrons intervened and broke up the fight between McGraw and defendant.
 {¶ 11} Specifically, Lightfoot identified defendant as the man she saw pulling out a gun just before the shooting; Nelsa Price Neal testified she saw that the man who was fighting McGraw had a gun; and Aaron Zachery testified he saw defendant holding a gun immediately after the shooting. Significantly, no witness testified to seeing any other individual with a gun at the time of the shooting. Thus, exclusion of Gravett's testimony would not have clearly altered the outcome of the trial.
 {¶ 12} Connor's testimony concerning Lightfoot's identification likewise would not have altered the trial results. On the night of the shooting, Connor interviewed Lightfoot. Connor testified that although Lightfoot was unable to identify defendant from a photo array, she identified Aaron Zachery. According to Connor, Lightfoot in the interview told him the shooter was standing next to Aaron Zachery at the time of the shooting. Connor's testimony differs from, and is more damaging to defendant, than Lightfoot's own testimony: Connor in effect identified defendant as the shooter, while Lightfoot testified only to seeing defendant with a gun.
 {¶ 13} As with Gravett's testimony, however, admission of Connor's testimony is not plain error because the state presented eyewitness testimony that defendant had a gun immediately before and after the shooting. In the absence of evidence rebutting this testimony, the record fails to support defendant's contention that the jury clearly would *Page 6 
have reached a different conclusion had Connor's testimony been excluded. Defendant's first assignment of error is overruled.
II. Second Assignment of Error — Prosecutorial Misconduct {¶ 14} In his second assignment of error, defendant maintains he did not receive a fair trial because of prosecutorial misconduct during the state's closing argument. He asserts the prosecution mischaracterized the testimony of several witnesses, improperly injected personal feelings into closing argument, and linked the manslaughter jury instruction to the defense in contravention of Columbus v. Bee (1979),67 Ohio App.2d 65.
 {¶ 15} The test regarding prosecutorial misconduct in closing argument is whether the remarks were improper, and if so, whether they prejudicially affected the accused's substantial rights. State v.Dennis, 10th Dist. No. 08AP-369, 2008-Ohio-6125, at ¶ 11, citingState v. Smith (1984), 14 Ohio St.3d 13, 14, and State v. Jackson
(2001), 92 Ohio St.3d 436, 441. In making this determination, the appellate court must view the allegedly improper remarks in context and consider the entire closing argument to determine whether the remarks prejudiced the accused. Id., citing State v. Treesh (2001),90 Ohio St.3d 460, 466. Instances of prosecutorial misconduct can be harmless when they are incidental and isolated. Id., citing State v.Lorraine (1993), 66 Ohio St.3d 414, 420, citing State v. Jenkins (1984),15 Ohio St.3d 164, fn. 49.
 {¶ 16} Defendant initially contends the prosecution in closing argument mischaracterized the testimony of a witness beyond the limits of mere argument. In the state's closing argument, the prosecution stated, "You heard several witnesses — or a witness say he pulled it out and that the little guy was the one that shot. That little guy *Page 7 
was the Defendant." (Tr. 472.) While the statement identifies defendant as the shooter, the prosecution reduced its possible prejudicial impact when it conceded during rebuttal that no witness actually saw defendant shoot the victim.
 {¶ 17} Equally as significant here, "[prosecutors are entitled to latitude as to what the evidence has shown and what inferences can be drawn therefrom." State v. Richey (1992), 64 Ohio St.3d 353, 362. The prosecutor's conclusion that defendant was the shooter was a fair inference from the testimony presented to the jury. Multiple witnesses saw defendant with a gun immediately before and after the shooting, while no one testified to seeing any other individual with a gun at that time.
 {¶ 18} Defendant next argues he was prejudiced when the prosecution commented about Gale Davis' testimony. The prosecution mistakenly stated Davis testified that defendant pointed the gun towards her. In fact, Davis left the bar when the fight broke out and never saw defendant with a gun. The prosecution also incorrectly stated Davis testified that defendant turned the gun towards her "coldly, calmly. Turns back and puts it in the back, the middle of the back of this victim. Cold. Calculating." (Tr. 490.)
 {¶ 19} In reality, Neal, not Davis, testified that when she was going towards the bar's back door, defendant pointed the gun at her: "It's like he was aiming towards [McGraw] but I was running around. So when he pulled it around, he was aiming at me[.]" (Tr. 405.) While the prosecutor misidentified the witness, she did not mischaracterize the substance of the evidence because a witness testified that defendant pointed the gun at her in attempting to aim the gun at McGraw. *Page 8 
 {¶ 20} Defendant also contends that, during closing argument, the prosecution "definitely identified" the manslaughter instruction given to the jury with the defense. After the prosecution finished presenting its case, defendant requested the jury be instructed on manslaughter as well as murder. In response to the jury instruction, the prosecution argued no evidence supported a manslaughter defense. In particular, the prosecution referenced defendant's not guilty plea and noted that throughout the case defendant maintained he did not shoot the victim. Defendant claims the prosecution's statement usurped the judge's role to instruct the jury because the statement connected defendant's initial plea with his request for an instruction on a lesser-included offense in violation of Bee, supra.
 {¶ 21} In Bee, the trial judge specifically stated that the defense requested the additional instruction given to the jury. By contrast, the prosecution here told the jury the judge would be giving the instructions; it did not directly identify the instructions with either party. Indeed, much of the argument appears addressed to the inconsistency in defendant's suggesting someone else was the shooter, but then arguing he acted under sudden passion or rage. While the prosecution vigorously argued the evidence did not show defendant acted under a sudden passion or rage, that aspect of the argument remained within proper limits.
 {¶ 22} Defendant finally argues the prosecution improperly mentioned a friend battling ovarian cancer. Even assuming this statement was improper, it cannot be said to have prejudiced defendant when considered in the context of the entire closing argument. Although defendant suggests the comment connects him with the request for a manslaughter instruction, nothing in the closing argument supports such an inference. *Page 9 
 {¶ 23} Accordingly, defendant's second assignment of error is overruled.
III. Third Assignment of Error — Ineffective Assistance ofCounsel {¶ 24} Defendant's last assignment of error is premised on the arguments made in his first two assignments of error. In it, he contends his trial counsel was ineffective because counsel failed to raise the issues addressed in the first two assignments of error.
 {¶ 25} To prove ineffective assistance of counsel, defendant must show that counsel's performance was deficient. Strickland v. Washington
(1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064. Defendant thus must show counsel made errors so serious that counsel was not functioning as the "counsel" the Sixth Amendment guarantees. Id. Defendant also must establish that the deficient performance prejudiced the defense, demonstrating that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Id. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. Id.
 {¶ 26} Even if we assume defendant's trial counsel erred in failing to object to the statements of the police officers and the prosecution, defendant has not demonstrated that the mistakes deprived him of a fair trial. Unrebutted testimony demonstrated defendant to be the only person at the scene with a weapon at the time of the shooting. As a result, the reliability of defendant's conviction is not placed in doubt: the outcome likely would not have been different even if defendant's attorney had objected and the disputed evidence and argument had been precluded. Defendant's third assignment of error is overruled. *Page 10 
 {¶ 27} Having overruled defendant's three assignments of error, the judgment of the trial court is affirmed.
Judgment affirmed.
BROWN and SADLER, JJ., concur. *Page 1