[Cite as *State v. Greenwood*, 2021-Ohio-921.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 19AP-683 |
| v. | : | (M.C. No. 18CRB-24999) |
| Eric B. Greenwood, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 23, 2021

**On brief:** *Zachary M. Klein*, City Attorney, *Melanie R. Tobias*, and *Orly Ahroni*, for appellee. **Argued:** *Orly Ahroni.*

**On brief:** *William T. Cramer*, for appellant. **Argued:** *William T. Cramer.*

APPEAL from the Franklin County Municipal Court

DORRIAN, P.J.

{¶ 1} Defendant-appellant, Eric B. Greenwood, appeals a judgment entered on September 10, 2019 in the Franklin County Municipal Court, finding him guilty pursuant to jury verdict, of sexual imposition. For the reasons explained below, we affirm.

## I. Facts and Procedural History

{¶ 2} On December 12, 2018, appellant was charged with sexual imposition for alleged sexual contact with S.T., who is not his spouse, to have occurred on October 24, 2018. The complaint alleges that appellant rubbed his penis on S.T.'s arm shoulder area, knowing that the sexual contact was offensive to S.T. or that he was reckless in regard to knowing that the sexual contact would be offensive to S.T.

{¶ 3} On the day of the incident, appellant was visiting with E.D. in her home located in Columbus, Ohio. S.T. lives with E.D. who is her caregiver, along with E.D.'s

fiancé, R.S. S.T. is a 65-year-old female who was described by E.D. as having mental retardation and developmental disabilities ("MRDD"), and cannot live on her own. S.T. has lived with E.D. since 2006, but the women have known each other for approximately 30 years.

{¶ 4} Prior to the criminal charge, it was common for appellant to visit E.D.'s home to watch tv and hang out approximately two to three times a week. In addition, appellant's then-girlfriend, J.J., would also visit. On the day of the incident, J.J. was living with E.D. while she recuperated from surgery. At some point prior to the incident, J.J. and appellant had lived in the same house with S.T., E.D., and R.S.

{¶ 5} On the day of the incident, S.T. was also at home, but remained in her bedroom located in the upstairs of the house. This was not unusual as S.T. stayed to herself in her bedroom coloring, doing puzzle books, and watching tv. At some time during appellant's visit, he went upstairs to use the bathroom and returned downstairs. Minutes later, appellant went back upstairs and entered S.T.'s bedroom. S.T. testified that appellant entered her bedroom without her permission, exposed his penis and rubbed it on her shoulder for approximately 20 minutes. S.T. further testified she did not want it to happen. J.J. observed appellant rubbing his penis on S.T.'s shoulder when she went upstairs looking for appellant. J.J. testified that S.T. "didn't look very happy with it" and was "[t]rying to move away." (Aug. 19, 2019 Tr. at 165-66.) On or about three days after the incident, E.D., J.J., and S.T. reported the incident at the prosecutor's office. Thereafter, appellant was charged with sexual imposition.

{¶ 6} On August 19 and 20, 2019, appellant proceeded to trial and was represented by counsel. E.D., J.J., and S.T. testified in addition to Detective Lance Ford and Officer Marcus Collins. The matter was tried before a jury who, after deliberation, found appellant guilty of sexual imposition, a misdemeanor of the third degree in violation of R.C. 2907.06(A). Appellant was sentenced on September 10, 2019.

{¶ 7} Appellant has filed a timely notice of appeal.

## II. Assignments of Error

{¶ 8} Appellant appeals and assigns the following four assignments of error for our review:

> [I.] Appellant's due process rights under the state and federal constitutions were violated by a conviction for sexual

imposition that was not supported by sufficient evidence that appellant touched the victim's erogenous zone.

[II.] The conviction for sexual imposition was not supported by the weight of the evidence.

[III.] The jury was confused or mislead by the jury instructions regarding sexual contact.

[IV.] Appellant's right to the effective assistance of counsel under the state and federal constitutions was violated when counsel failed to object to an erroneous jury instruction.

For ease of discussion, we address appellant's assignments of error out of order.

## III. Discussion

### A. Third Assignment of Error - The Trial Court Properly Instructed the Jury on All Elements of the Sexual Imposition Statute

{¶ 9} Appellant argues in his third assignment of error that the trial court erred by failing to instruct the jury on the full language of the sexual imposition statute and by including factual allegations from the complaint within the instructions. Appellant asserts the plain language of the sexual imposition statute should have been read to the jury instead.

{¶ 10} Appellant concedes that he did not object to the jury instructions before the jury retired, thereby waiving any argument but for plain error. *State v. Lipkins*, 10th Dist. No. 16AP-616, 2017-Ohio-4085, ¶ 28, citing *State v. Cook*, 65 Ohio St.3d 516, 527 (1992). Crim.R. 52 sets forth "three limits on reviewing courts for correcting plain error: the trial court must have deviated from the legal rule, the deviation must be a plain, or obvious, defect in the proceedings, and the deviation must have affected substantial rights." *State v. Zachery*, 10th Dist. No. 08AP-451, 2009-Ohio-1180, ¶ 8. Ohio precedent is clear, "[c]ourts are to notice plain error 'only to prevent a manifest miscarriage of justice.' " *Id.*, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. The party asserting plain error has the burden of proof to show the outcome "clearly would have been different absent the error." *State v. Petty*, 10th Dist. No. 11AP-716, 2012-Ohio-2989, ¶ 15, quoting *Zachery* at ¶ 8.

{¶ 11} "Trial courts have the responsibility to give all jury instructions that are relevant and necessary in order for the jury to properly weigh the evidence and perform its

duty as the fact-finder."  *Columbus v. Aleshire*, 187 Ohio App.3d 660, 2010-Ohio-2773, ¶ 51 (10th Dist.).  " 'A jury instruction is proper when it adequately informs the jury of the law.' " *State v. Conway*, 10th Dist. No. 03AP-585, 2004-Ohio-1222, ¶ 24, quoting *State v. Moody*, 10th Dist. No. 98AP-1371 (Mar. 13, 2001).

{¶ 12} At the conclusion of the evidence and closing arguments, the trial court delineated the functions of the court and jury.  Specifically, "[j]urors decide the disputed facts and the Court provides the instructions of law.  It is your sworn duty to accept these instructions and to apply the law as it is given to you.  You are not permitted to change the law nor to apply your own conception of what you think the law is or should be."  (Aug. 19, 2019 Tr. at 278.)  The court further instructed, "the defendant is presumed innocent unless and until his guilt is established by proof beyond a reasonable doubt."  (Aug. 19, 2019 Tr. at 278.)  And lastly, "[t]he defendant must be acquitted unless the State produces evidence which convinces you beyond a reasonable doubt of every essential element of the offenses charged in the complaint."  (Aug. 19, 2019 Tr. at 278-79.)

{¶ 13} The trial court then read the statutory provisions for sexual imposition and sexual contact. Specifically, the trial court instructed:

> The charge. The offense to be examined is sexual imposition. Before you can find the defendant guilty of sexual imposition, you must find beyond a reasonable doubt that on or about a day between October 18, 2018 and October 31, 2018, did have sexual contact, to wit: Rubbed his penis on her arm, shoulder area with another, not his spouse, to wit: [S.T.], knowing that the sexual contact was offensive to the said victim or being reckless in regards to knowing that the sexual contact would be offensive to the said victim, in violation of 2907.06(A)(1) of the Ohio Revised Code.

(Aug. 19, 2019 Tr. at 282.)  Next, the trial court instructed "[s]exual contact means any touching of an erogenous zone of another, including without limitation, thigh, genitals, buttocks, pubic region, or if the person is a female, a breast, for the purpose of arousing or gratifying either person."  (Aug. 19, 2019 Tr. at 282.)  Appellant does not dispute that the statutory definition of sexual contact was read to the jury.

{¶ 14} Due to the presentation of the jury instructions regarding the statutory language for sexual imposition, appellant believes the jury was confused or misled to believe that sexual contact was already established.  Appellant believes the trial court's

instruction "did have sexual contact, to wit: Rubbed his penis on her arm, shoulder area," led the jury to believe they could only find appellant guilty if they found appellant touched S.T. with the requisite intent. (Aug. 19, 2019 Tr. at 282.) Analogous to appellant's arguments herein, the Fifth District Court of Appeals addressed a similar argument regarding the use of "to wit" language in a jury instruction. *State v. Roth*, 5th Dist. No. 1999CA00013 (Sept. 27, 1999). In *Roth*, the trial court's jury instruction as to the charge of felonious assault included "by means of a deadly weapon, to wit, an iron skillet." *Id.* The court declined to find any error in the instruction that cited both the wording of the indictment and the statute because the court "explained and defined deadly weapon as an independent element of the charge of felonious assault." *Id.*

{¶ 15} Upon review of the trial court's instructions in the matter at bar, this court is not persuaded by appellant's argument. A jury is presumed to follow a trial court's instructions. *State v. McKinney*, 10th Dist. No. 13AP-211, 2013-Ohio-5394, ¶ 15. As in *Roth*, the trial court cited facts from the indictment and the statute, but also provided the statutory definition of sexual contact. *Roth*. The trial court further instructed the jury that every element of the offense as charged must be proven beyond a reasonable doubt. Lastly, the trial court charged the jury by stating, "[i]t is your duty to carefully weigh the evidence to decide all disputed questions of fact, to apply the instructions of law given to you by the Court to those findings, and to render your verdict accordingly." (Aug. 19, 2019 Tr. at 284.)

{¶ 16} Based on the instructions given to the jury, this court does not find the trial court deviated from the legal rule in such a way that affected appellant's substantial rights or that the outcome of the trial would have differed had the jury been instructed as argued by appellant. Thus, we cannot find the trial court committed plain error in instructing the jury.

{¶ 17} Accordingly, we overrule appellant's third assignment of error.

## B. First Assignment of Error - Sufficient Evidence was Presented to Support Conviction for Sexual Imposition

{¶ 18} In his first assignment of error, appellant argues that no reasonable juror could find sufficient evidence to convict appellant of sexual imposition because he touched the victim on the shoulder, which is not an erogenous zone.

{¶ 19} Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law, not fact. *Id.* In determining whether the evidence is legally sufficient to support a conviction, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed, but whether if believed the evidence supports the conviction. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80 (evaluation of witness credibility not proper on review for sufficiency of evidence); *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4 (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime").

{¶ 20} Appellant was charged with sexual imposition, pursuant to R.C. 2907.06(A)(1), which states:

> No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when * * * [t]he offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.

Sexual imposition requires a finding that sexual contact occurred. R.C. 2907.06(A)(1). The complaint did not charge appellant with causing another to have sexual contact with the offender, or with causing two or more other persons to have sexual contact. Rather, appellant was charged with having sexual contact with S.T. Consistent with the complaint, the jury was only instructed, in relevant part, "you must find beyond a reasonable doubt that [appellant] did have sexual contact." (Aug. 19, 2019 Tr. at 282.)

{¶ 21} In order to support a conviction of sexual imposition, the jury would have to find appellant had sexual contact with S.T. and appellant either knew the sexual contact was offensive to S.T. or was reckless in that regard. Appellant does not argue on appeal that

he did not touch S.T., only that the touching did not rise to sexual contact because, according to appellant, a shoulder is not an erogenous zone.

{¶ 22} Sexual contact means "any touching of an erogenous zone of another, *including without limitation* the thigh, genitals, buttocks, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." (Emphasis added.) R.C. 2907.01(B). Ohio courts have defined "erogenous zone" broadly, leaving the determination of what constitutes an erogenous zone for the fact finder. *State v. Watkins*, 10th Dist. No. 92AP-1546 (May 4, 1993). " '[T]he legislature intended that body parts that are not traditionally viewed as erogenous zones, may, in some instances, be considered erogenous zones.' " *Core v. State*, 191 Ohio App.3d 651, 2010-Ohio-6292, ¶ 21 (10th Dist.), quoting *State v. Miesse*, 2d Dist. No. 99-CA-74 (Aug. 18, 2000) (rejecting an argument that stomach was not an erogenous zone because it was not among the body parts listed in R.C. 2907.01(B)). *See also State v. Ball*, 4th Dist. No. 07CA2, 2008-Ohio-337, ¶ 26 ("[w]hile the mouth is not specifically among the body parts listed in R.C. 2907.01, it may, under the facts of a particular case, be considered an erogenous zone"). Appellant's argument that no reasonable juror could find him guilty because a shoulder cannot be an erogenous zone within the context of sexual imposition is without merit.

{¶ 23} The definition of "sexual contact" has been interpreted by several courts to include any physical touching, even through clothing, of the body of another. *State v. West*, 10th Dist. No. 06AP-111, 2006-Ohio-6259, ¶ 20. In determining whether sexual contact occurred:

> [T]he proper method is to permit the trier of fact to infer from the evidence presented at trial whether the purpose of the defendant was sexual arousal or gratification by his contact with those areas of the body described in R.C. 2907.01. In making its decision the trier of fact may consider the type, nature and circumstances of the contact, along with the personality of the defendant. From these facts the trier of facts may infer what the defendant's motivation was in making the physical contact with the victim. If the trier of fact determines, that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved.

*State v. Kring*, 10th Dist. No. 07AP-610, 2008-Ohio-3290, ¶ 35, quoting *In re Anderson*, 116 Ohio App.3d 441, 444 (12th Dist.1996).  Sexual arousal or gratification is " 'any touching of the described areas which a reasonable person would perceive as sexually stimulating or gratifying.' "  *Watkins*, quoting *State v. Astley*, 36 Ohio App.3d 247, 250 (10th Dist.1987).

{¶ 24}  Appellant's assignment of error with regard to sufficiency of the evidence does not address the remaining elements of the charge of sexual imposition.  Appellant's focus is solely on whether S.T.'s shoulder could have been found to be an erogenous zone under the law.  Because body parts that are not traditionally viewed as erogenous zones may, in some instances, be considered erogenous zones, we look to determine if the incident between appellant and S.T. was "sexual contact" as defined by R.C. 2907.01(B).

{¶ 25}  Appellant entered S.T.'s room without invitation and closed the door behind him. S.T. testified she was seated at her desk and when she looked up from her puzzle book, appellant's pants were down and she could see his penis.  S.T. testified that appellant walked toward her while speaking to her.  Appellant started rubbing S.T. and asked for a hug.  S.T. gave appellant a hug but told him she did not want to.  Appellant then asked S.T. how her day was going and told her that everything would be fine.  Appellant pulled his penis out and asked S.T. to look at his penis.  S.T. told appellant she did not want to look at his penis. Appellant tried to rub his penis on S.T.'s right shoulder and S.T. informed appellant she "didn't want [him] to [do that]."  (Aug. 19, 2019 Tr. at 193.)

{¶ 26}  According to S.T., she remained seated at her desk during the encounter with appellant, except for getting up to give appellant a "friendly hug."  (Aug. 19, 2019 Tr. at 194.) S.T. further testified she asked appellant to leave, but he said no.  After appellant pulled his penis out, S.T. testified appellant touched her right shoulder with his penis and rubbed his penis on her shoulder for about 20 minutes.  S.T. testified she did not ask appellant to do that nor did she want him to.  Appellant told S.T. "he wanted to do that." (Aug. 19, 2019 Tr. at 194.)  S.T. told appellant that somebody was going to come upstairs and catch him. Appellant responded that no one was going to come upstairs and catch him.

{¶ 27}  During this incident, S.T. heard the door to her room quietly open, but did not see who entered. S.T. testified that appellant looked around and she remained looking at the book she was working on.  No one spoke, but S.T. "guess[ed]" that it was appellant's girlfriend, J.J., who entered the room. (Aug. 19, 2019 Tr. at 195.)  S.T. believes appellant

left right after the other person entered and that appellant and the other person left together. S.T. remained in her room in her seat, scared and nervous about what would happen next. S.T. remained in her bedroom alone until she spoke with E.D.

{¶ 28} J.J. testified that she entered S.T.'s room and saw S.T. sitting in a chair at her desk. J.J. saw appellant was standing while rubbing his penis on S.T.'s shoulder. While J.J. watched, no one spoke. J.J. testified S.T. did not look happy and tried to move away from appellant. J.J. testified she observed appellant and S.T. for two minutes, then left and slammed the door.

{¶ 29} No evidence or testimony was presented to establish that appellant accidentally placed his penis on S.T.'s shoulder. As provided in the facts and procedural history, S.T. kept to herself in her bedroom when visitors were at E.D.'s home. Trial testimony reflects that prior to this incident, appellant and S.T. did not spend time together in S.T.'s bedroom. Testimony established that appellant first went upstairs to use the bathroom but went back up a few minutes later. Appellant entered S.T.'s bedroom with his pants down and reassured S.T. that all would be fine. S.T. let appellant know that she did not want appellant to touch her and asked him to leave her bedroom. Appellant removed his penis from his pants and rubbed his penis on S.T.'s right shoulder for 20 minutes. J.J. also observed appellant rubbing his penis on S.T.'s right shoulder. Further, S.T. remained seated throughout appellant's stay, save for a brief hug. Because of appellant's frequent visits with E.D. and the period of time during which appellant lived with E.D. and S.T., S.T.'s intellectual disability would have been known to him.

{¶ 30} On the facts and circumstances of this case, we find, viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence for any rational trier of fact to have found the element of sexual contact proven beyond a reasonable doubt.

{¶ 31} Accordingly, we overrule appellant's first assignment of error.

### C. Second Assignment of Error - Conviction of Sexual Imposition Is Supported by the Weight of the Evidence

{¶ 32} Appellant assigns in his second assignment of error that the weight of the evidence does not support a finding that appellant committed a crime of sexual imposition. In support, appellant makes several arguments related to the reporting of the incident and the credibility of the witnesses.

{¶ 33} An appellate court acts as a "thirteenth juror" when determining whether a verdict is against the manifest weight of the evidence. *Thompkins* at 387. "Under this standard of review, an appellate court weighs the evidence in order to determine whether the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162, ¶ 125, citing *Thompkins* at 387. "However, in engaging in this weighing, an appellate court must bear in mind the factfinder's superior, first-hand perspective in judging the demeanor and credibility of witnesses." *Id.*, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶ 34} Appellant first supports his argument by questioning the credibility of the witnesses. Appellant attempts to diminish the credibility of S.T. by pointing to S.T.'s special needs that require her to reside with a caretaker and her admission that she gets confused. S.T. began living with E.D. in 2006. S.T. enjoys coloring, word search puzzles, and watching tv. E.D. assists S.T. with bills, doctor appointments, medication and reminds her to take a bath. E.D. characterized S.T.'s intellectual disability as "MRDD" and testified S.T. is not capable of living on her own. Thus, the jury was aware of S.T.'s intellectual disability. Furthermore, S.T.'s testimony was clear and detailed. Other than not remembering the specific date of the offense, she answered questions of the prosecutor and the defense attorney without confusion.

{¶ 35} Appellant next asserts that J.J.'s testimony affirming her observation of appellant rubbing his penis on S.T.'s shoulder for two minutes is "preposterous." (Appellant's Brief at 12.) J.J. testified she saw appellant's cell phone and cigarettes on the couch, but he was not in the living room. According to J.J., appellant never walks away from his cell phone or cigarettes. J.J. was curious where appellant went and R.S. told her appellant went back upstairs. J.J. was familiar with the house and first looked in the bathroom, but appellant was not there. J.J. next went to S.T.'s bedroom and opened the door. J.J. testified she stood there for two minutes and witnessed appellant rubbing his penis on S.T.'s shoulder. J.J. stated S.T. was sitting at her desk. J.J. then left the room, slammed the bedroom door, and went downstairs into the kitchen. J.J. was visibly upset, crying, and shaking. J.J. testified she was upset because appellant cheated on her, but she was also concerned about S.T.'s mental health. Appellant followed downstairs and

attempted to talk to J.J., denying he did anything when J.J. asked how he could do this to her. Appellant ended up leaving the house.

{¶ 36} Whether J.J. stood in S.T.'s doorway for two minutes or ten seconds, her testimony supports S.T.'s allegation that appellant stood by her while she was seated at her desk and rubbed his penis on her shoulder. Further, the testimony presented at trial established that S.T. "pretty much stayed to herself" in her room and that she did not have a relationship with appellant in which they associated alone together. (Aug. 19, 2019 Tr. At 123.)

{¶ 37} Appellant also maintains J.J. has diminished credibility because of previous criminal convictions. J.J. admitted at trial she pled guilty in 2003 to attempted forgery and in 2004 to forgery. J.J. agreed that forgery is a dishonest offense, but would not agree that she is always a dishonest person. However, the jury was aware of J.J.'s forgery convictions.

{¶ 38} Appellant next argues that S.T.'s failure to timely report the incident goes against the weight of the evidence and ruined any chance to obtain DNA evidence to verify the claim. E.D. explained that she had a conversation with S.T. about what J.J. told her, but that she did not initially call the police because S.T. was afraid no one would believe her. E.D. testified that S.T. did not want to go to the prosecutor or get appellant in trouble. E.D. had a conversation with S.T. and convinced her to report the incident three days later because she and R.S. were talking and they told S.T. she needed to talk to someone. E.D. contacted J.J. about going to the prosecutor where she spoke with a police officer. Furthermore, appellant argues that the delay prevented obtaining DNA "to verify the claim" but he does not make the argument that the DNA would have been exculpatory evidence. (Appellant's Brief at 12.)

{¶ 39} Appellant also argues that E.D. and J.J. coerced S.T. into reporting the allegations. However, S.T. testified she wanted to tell someone what appellant had done, but she did not know how and was also afraid they would be mad if she told the truth.

{¶ 40} Finally, appellant asserts the detective admitted that his interview of S.T. in the presence of J.J. was a mistake and cites this as a basis to find that the weight of the evidence does not support a conviction. However, the jury was aware of the detective's testimony in this regard.

{¶ 41} The factfinder is in the best position to observe the demeanor, voice inflection, and gestures of the witnesses as they testify. *State v. Williams*, 10th Dist. No. 02AP-35, 2002-Ohio-4503, ¶ 58. "In determining witness credibility, the jury is entitled to consider the reasonableness of the testimony and all the facts and circumstances surrounding the testimony." *State v. Brown*, 10th Dist. No. 15AP-935, 2016-Ohio-7944, ¶ 35, citing *State v. Ealy*, 10th Dist. No. 15AP-600, 2016-Ohio-1185. Here, the jury had the opportunity to evaluate the demeanor and testimony of each witness and on deliberation found appellant guilty of sexual imposition. Upon review of the record, this court does not find the same issues with credibility and the weight of the evidence as appellant asserts. This is not the exceptional case where the jury lost its way.

{¶ 42} Accordingly, we overrule appellant's second assignment of error.

**D.  Fourth Assignment of Error - Appellant's Counsel did not Perform Deficiently and no Prejudice Resulted - Therefore the Claim of Ineffective Assistance of Counsel is Without Merit**

{¶ 43} In his fourth assignment of error, appellant argues that his right to effective assistance of counsel was violated when counsel failed to object to an erroneous jury instruction.

{¶ 44} "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial [court] cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). An ineffective assistance of counsel claim must satisfy a two-prong test under *Strickland*. First, appellant must demonstrate that trial counsel's performance was deficient. *Id.* at 687. A deficient performance requires a showing that counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, appellant must be able to prove prejudice by the deficient performance by counsel. *Id.* "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In considering claims of ineffective assistance of counsel, courts indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101.

{¶ 45} Appellant argues under the first prong of the *Strickland* test that it is objectively reasonable to expect counsel to require a full instruction on the elements of the offense that does not incorporate the allegations from the complaint. Appellant believes that further instruction requiring the jury to determine whether touching S.T.'s shoulder actually fit the description of sexual contact was more likely to produce an acquittal or a hung jury than an instruction indicating that it was per se sexual contact. As a general rule, strategic and tactical decisions of trial counsel cannot form the basis of a claim of ineffective assistance of counsel. *See, e.g., Columbus v. Oppong*, 10th Dist. No. 15AP-1059, 2016-Ohio-5590. This court has previously noted that a decision not to request a particular jury instruction is a matter of trial strategy and does not generally substantiate a claim of ineffective assistance of counsel. *State v. Glenn-Coulverson*, 10th Dist. No. 16AP-265, 2017-Ohio-2671, ¶ 56, citing *State v. Morris*, 9th Dist. No. 22089, 2005-Ohio-1136, ¶ 100.

{¶ 46} The state argues that appellant's counsel's strategy at trial was not to focus on the question of whether there was sufficient evidence to establish the shoulder as an erogenous zone but, rather, to focus on the incredulous nature of the testimony of each witness. In closing argument, appellant's counsel concluded that "this story does not make sense. [Appellant] is innocent." (Aug. 19, 2019 Tr. at 273.) Consistent with many of the arguments he made in support of the second assignment of error that the verdict was against the manifest weight of the evidence, counsel argued J.J.'s testimony that she watched for two minutes did not make sense; E.D.'s testimony that she did not call police did not make sense; the fact that R.T. did not call police did not make sense; and the fact that no witness could give an exact date for when this happened did not make sense. Appellant's counsel further argued that S.T.'s testimony was unreliable because she gets confused and was vulnerable and susceptible to manipulation and that J.J.'s testimony was unreliable because J.J. is a liar and is appellant's ex-girlfriend. Counsel's strategy was to argue that the story does not make sense. Counsel did not argue the shoulder was not an erogenous zone. With this in mind, we cannot find appellant's counsel was deficient in choosing to pursue the "it doesn't make sense" strategy over the other. (Aug. 19, 2019 Tr. at 270.) Therefore, appellant does not meet the first prong of *Strickland*.

{¶ 47} Nevertheless, even assuming arguendo, appellant's counsel's performance was deficient, we could not find ineffective assistance of counsel because appellant cannot

show prejudice and therefore does not meet the second prong of *Strickland*. In our discussion of the third assignment of error, we considered the jury instruction which appellant alleges was erroneous. We considered the instruction itself, and also the fact that the trial court also instructed the jury on the statutory definition of sexual contact; instructed the jury that every element of the offense as charged must be proven beyond a reasonable doubt; and instructed the jury that "[i]t is your duty to carefully weigh the evidence to decide all disputed questions of fact, to apply the instructions of law given to you by the Court to those findings, and to render your verdict accordingly." (Aug. 19, 2019 Tr. at 284.) We found no plain error. Further, taking into consideration the evidence presented, we cannot say there was a reasonable probability that the outcome would have been different had appellant's counsel objected to the instruction.

{¶ 48} Accordingly, we overrule appellant's fourth assignment of error.

**IV. Conclusion**

{¶ 49} Having overruled appellant's four assignments of error, we affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

LUPER SCHUSTER and HESS, JJ., concur.

HESS, J., of the Fourth Appellate District, sitting by assignment in the Tenth Appellate District.

————————