[Cite as *M.S. v. Ives*, 2025-Ohio-5312.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| M.S. | Case No. 2025 CA 00011 |
| Petitioner - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Court of Common Pleas, Domestic Relations Division, Case No. 24 DR 01007 |
| Neil Ives | |
| Respondent – Appellant | Judgment: Affirmed |
| | Date of Judgment Entry: November 24, 2025 |

**BEFORE:** Craig R. Baldwin; Andrew J. King; David M. Gormley, Appellate Judges

**APPEARANCES:** SAMUEL H. SHAMANSKY, DONALD L. REGENSBURGER, ASHTON C. GAITANOS, for Defendant-Appellant.

*King, P.J.*

{¶ 1} Respondent-Appellant Neil Ives appeals the November 14, 2024 decision of the Licking County Court of Common Pleas Domestic Relations Division which granted a domestic violence civil protection order (DVCPO) to petitioner-appellee M.S. We affirm the trial court.

Facts and Procedural History

{¶ 2} M.S. and appellant married in 2023. They have a son in common and M.S. has a daughter from a previous relationship. Appellant suffers from mental health challenges including depression, bipolar disorder, and hearing voices, which caused difficulty in the marriage. Appellant also drinks excessively which exacerbates his mental health issues.

{¶ 3}   In December 2023, appellant took M.S.'s daughter out for archery practice. Appellant and M.S. had argued before they left. When appellant came home drunk, M.S. became upset because appellant had been driving drunk with her daughter in the car. Appellant became angry, ran and got his gun, and was screaming about how the voices were going to win and he was going to end it for both of them. He then held the gun first to his own head, and then to M.S.'s head and made her put her finger on the trigger.

{¶ 4}   Following the incident, M.S. did not call police because she felt the need to protect appellant. She did, however, call appellant's mother who called police. Appellant was arrested and then hospitalized in a mental health facility in Columbus, Ohio.

{¶ 5}   Following his release from treatment, appellant functioned well for a while and again took a role in family life and child care. But in September of 2024, appellant forcefully moved M.S. by grabbing her by the arms and leaving bruising where his thumbs had dug into her arms. In October of 2024 the relationship between appellant and M.S. soured further. On October 16, 2024, appellant came home for lunch and told M.S. he wanted a divorce and told her to get out of the house. M.S. explained she could not go anywhere until she was financially able and needed some time. Appellant became angry and told M.S. he would "smoke her out" starting with disabling the internet that M.S. needed to perform her remote job duties. Appellant started towards the room where the internet box was located. M.S. blocked his path into the room and tried to shut the door while appellant tried to push it open. During the struggle, appellant struck M.S. in the face with a closed fist and bloodied her lip. Appellant then entered the room and ripped the internet box out of the wall.

{¶ 6} When their infant son began crying, appellant stated he was just going to take their son and leave. M.S. called her father who in turn called police. M.S. also called appellant's mother. Appellant's mother arrived and she and appellant waited outside for police. Newark Police officers arrived and took photos of M.S.'s bloody lip. Officers also asked M.S. about the bruising on her upper arms as well, but M.S. refused to discuss the bruising. Appellant admitted to officers that he had forced the door open and had intended to rip out the internet in order to interfere with M.S.'s job, but denied striking M.S. Appellant was taken into custody that day.

{¶ 7} Thereafter, M.S. sought a DVCPO. A magistrate issued an ex parte order of protection on October 17, 2024, and scheduled a final hearing for November 8, 2024. Three days before the hearing appellant retained new counsel who filed a motion for a continuance. The magistrate denied the motion.

{¶ 8} During the hearing, counsel for M.S. elicited the above outlined testimony. Appellant called a former girlfriend to testify that she had observed M.S. biting her lip in the past and stated she had no concerns regarding appellant's ability to safely parent the child they had in common.

{¶ 9} On November 14, 2024, the magistrate granted M.S.'s petition for a DVCPO. Appellant filed objections to the magistrate's findings. On February 5, 2025, the trial court overruled appellant's objections.

{¶ 10} Appellant filed an appeal and the matter is now before this court for consideration. He raises five assignments of error as follows. For ease of discussion, we will address some assignments of error together.

I

{¶ 11} "THE TRIAL COURT'S DENIAL OF APPELLANT'S REQUEST TO CONTINUE THE FINAL HEARING CONSTITUTED AN ABUSE OF DISCRETION AND VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL AS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTIONS."

II

{¶ 12} "THE TRIAL COURT ERRED IN PERMITTING APPELLEE TO TESTIFY REGARDING PRIOR UNDISCLOSED ALLEGATIONS OF DOMESTIC VIOLENCE IN VIOLATION OF APPELLANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL AS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTIONS."

III

{¶ 13} "THE TRIAL COURT'S ISSUANCE OF A DVCPO WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION."

IV

{¶ 14} "THE MAGISTRATE'S DECISION TO EXTEND THE DVCPO TO INCLUDE J.I. AND A.P. WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE IN VIOLATION OF APPELLANT'S RIGHTS TO DUE PROCESS AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION."

V

{¶ 15} "IN DENYING APPELLANT'S OBJECTIONS, THE TRIAL COURT RELIED ON FACTS OUTSIDE THE RECORD AND ITS OWN MEDICAL OPINION IN VIOLATION OF APPELLANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL AS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTIONS."

I

{¶ 16} In his first assignment of error, appellant argues the trial court abused its discretion when it denied his motion for a continuance of the November 8, 2024 hearing. We disagree.

Standard of Review

{¶ 17} The decision to grant or deny a continuance is entrusted to the broad, sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Lemon v. Lemon,* 2011-Ohio-1878 (5th Dist.) citing *State v. Unger,* 67 Ohio St.2d 65, (1981). "Abuse of discretion" means an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87 (1985). Most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. *AAAA Ent., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161 (1990). An unreasonable decision is one backed by no sound reasoning process that would support that decision. *Id*. "It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id*.

{¶ 18} In determining whether a trial court abused its discretion in denying a motion for a continuance, an appellate court should consider the following factors: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconvenience to witnesses, opposing counsel, and the court; (4) whether there is a legitimate reason for the continuance; (5) whether the defendant contributed to the circumstances giving rise to the need for the continuance, and other relevant factors, depending on the unique facts of each case. *State v. Unger*, 67 Ohio St.2d 65, 67-68 (1981). The *Unger* Court set forth a test that balances the ". . . court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice against any potential prejudice" to the defendant. *In re Barnick*, 2007-Ohio-1720, ¶ 10 (8th Dist.), quoting *Unger*.

{¶ 19} When applying the abuse of discretion standard, we are precluded from substituting our own judgment for that of the trial court. *Pons v. Ohio State Med. Bd*., 1993-Ohio-122.

Analysis

{¶ 20} In this matter, appellant was served with the petition for the DVCPO and the ex parte order of protection on October 17, 2024. On October 22, 2024, due to out-of-state travel, counsel for M.S. requested and received a continuance of the full DVCPO hearing, originally scheduled for October 25, 2024. The hearing was continued to November 8, 2024. On October 28, 2024, counsel for appellant filed a notice of appearance.

{¶ 21} Three days before the scheduled hearing, appellant retained new counsel. On November 5, 2024, counsel filed both a notice of appearance and a motion to continue

citing a need for additional time to prepare and conduct discovery. On November 6, 2024, appellant's original counsel filed a motion to withdraw as counsel stating appellant had advised he no longer required his services.

{¶ 22} On November 7, 2024, appellant's motion to continue was denied. The magistrate issuing the judgment noted the matter had already been continued once and that witnesses had already been subpoenaed for the following day. Magistrate's Order, November 7, 2024, docket item 15.

{¶ 23} Following the full hearing, appellant filed objections to the magistrate's findings, including an objection to the magistrate's decision denying his motion to continue. The trial court found no abuse of discretion. It noted appellant had elected to change counsel at the eleventh hour, and further found appellant had failed to comply with Licking County Local Rule 16.7 which states "Unless extraordinary circumstances are shown to exist, motions for continuances submitted within three days of the trial/hearing date may automatically be denied."

{¶ 24} Appellant speculates that he was penalized for appellee's previous continuance, but the record contains no evidence to support his claim. Appellant further faults the trial court for its "fixation" on the local rule, however, the trial court first cited the fact that appellant had 19 days to prepare for the hearing yet made the decision to change counsel immediately before the scheduled hearing. Opinion/Judgment Entry filed February 5, 2025, docket item 26, at 11. The magistrate had additionally noted that witnesses had already been subpoenaed for November 8, 2024 by the time appellant had filed his motion to continue. We therefore find the trial court did not abuse its discretion in denying appellant's motion as appellant contributed to the circumstances giving rise to

the need for a continuance, and granting a continuance would create inconvenience to witnesses who had already been subpoenaed for the following day.

{¶ 25} The first assignment of error is overruled.

II

{¶ 26} In his second assignment of error, appellant argues his inability to prepare for trial due to the trial court's denial of his motion for a continuance was compounded by the trial court permitting M.S. to testify regarding previously undisclosed incidents of domestic violence. We find error, if any, was harmless.

Standard of Review

{¶ 27} A respondent to a petition for a DVCPO is entitled to be served with the petition before the full hearing on the petition, and is also entitled to a "full hearing" on the matters alleged in the petition. R.C. 3113.31(D)(2)(a). The statute does not define "full hearing." The Fourth District Court of Appeals, however, has defined "full hearing" as:

> [N]ot only the right to present evidence, but also a reasonable opportunity to know the claims of an opposing party and to meet them . . . A "full hearing" is one in which ample opportunity is afforded to all parties to make, by evidence and argument, a showing fairly adequate to establish the propriety or impropriety of the step asked to be taken.

{¶ 28} *Deacon v. Landers*, 68 Ohio App.3d 26, 29-30 (4th Dist. 1990). Accord *D.M.W. v. E.W.*, 2018-Ohio-821, ¶ 12 (10th Dist.).

## Harmless Error

{¶ 29}    Civ.R. 61 governs harmless error in civil cases and states in part:

> [N]o error or defect in any ruling or order or in anything done or omitted by the court . . . is ground for . . . vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

{¶ 30}  Under Civ.R. 61, in order for this Court to find that an error is harmless, it must weigh the prejudicial effect of the error and "determine that, if th[e] error[ ] had not occurred, the . . . trier of the facts would probably have made the same decision." *In re Z.H.*, 2022-Ohio-184, ¶ 9 (9th Dist.), citing *O'Brien v. Angley*, 63 Ohio St.2d 159, 164-165 (1980), internal citation omitted.

## Appellant's Arguments

{¶ 31} Appellant cites two instances of domestic violence which M.S. testified about which he alleges were not included in the petition and therefore his counsel was allegedly unaware of due to the denial of a continuance as discussed in the first assignment of error. Appellant first cites the December 2023 incident wherein appellant held a gun to M.S.'s head and threatened to kill them both. We note that paragraph 7 of the petition states:

Respondent has a history of mental health [sic] he is bipolar and had depression doctor diagnosed. Respondent has access to firearms. Respondent has a history of alcohol abuse. Respondent threats [sic] to kill himself was pink slipped and kept Dec. 16 2023.

{¶ 32} When appellant objected to M.S.'s testimony regarding the December 2023 incident because it was not contained in the petition, counsel for M.S. indicated the testimony pertained to paragraph seven of the petition. The magistrate agreed and permitted the testimony. Appellant challenged that ruling in his objections to the magistrate's decision and the trial court found the testimony was admissible, but even assuming arguendo it was not, it found the testimony harmless: "even if the court were to exclude all evidence offered at the hearing, other than that relating to the specific incident of October 16, 2024 . . .it finds sufficient evidence was adduced to issue the Order of Protection."  Opinion/Judgment Entry, February 5, 2025, docket item 26 at page 8.

{¶ 33} Appellant makes the same argument regarding the incident wherein appellant grabbed M.S.'s arms and left bruises. However, harmless error is also applicable to any testimony regarding that incident. We agree with the trial court; M.S.'s testimony regarding the final incident of October 16, 2024, was sufficient to warrant granting the DVCPO. Thus, even if the alleged error had not occurred, the trier of fact would probably have made the same decision.

{¶ 34} The second assignment of error is overruled.

III, IV

{¶ 35} In his third assignment of error, appellant argues the issuance of a DVCPO was against the manifest weight of the evidence. In his fourth assignment of error, appellant argues the record lacks sufficient evidence to extend the DVCPO to the children, J.I. and A.P. We disagree.

Applicable Law/Standard of Review

{¶ 36} "When granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence. R.C. 3113.31(D)." *Felton v. Felton*, 1997-Ohio-302, paragraph two of the syllabus. "Preponderance of the evidence" is "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not." Black's Law Dictionary 1182 (6th Ed.1990).

{¶ 37} R.C. 3113.31(A)(1) provides in relevant part:

"Domestic violence" means any of the following:

(a) The occurrence of one or more of the following acts against a family or household member:

(i) Attempting to cause or recklessly causing bodily injury;

(ii) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 [menacing by stalking] or 2911.211 [aggravated trespass] of the Revised Code;

(iii) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code;. . .

{¶ 38} Sufficiency of the evidence "is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict [decision] is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶ 39} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, (1st Dist.1983). In *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997) quoting Black's Law Dictionary 1594 (6th Ed.1990), the Supreme Court of Ohio explained:

Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be

established before them.  Weight is not a question of mathematics, but depends on its *effect in inducing belief*."  (Emphasis sic.)

{¶ 40} In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings.  *Eastley v. Volkman*, 2012-Ohio-2179.

Appellant's Arguments

{¶ 41} Appellant argues M.S.'s testimony lacked credibility. His arguments include M.S.'s testimony regarding the mechanics of the struggle at the door during the October 2024 event, related to how she received the injury to her lip, and the fact that she failed to answer a responding officer's question regarding the bruises on her arms. Appellant argues the injury to M.S.'s lip was the result of habitual lip biting rather than domestic violence. He further argues there was no credible evidence presented that would support extending the DVCPO's protection to the children and that M.S. had no issue with him caring for the children.

{¶ 42} It is axiomatic that the credibility of a witness is a matter primarily for the trier of fact to determine. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. A reviewing court gives deference to the fact finder's determination of witness credibility because the finder of fact "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984). In judging witness credibility, the finder of fact "may believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v.*

*Antill*, 176 Ohio St. 61, 67 (1964). Additionally, when deciding whether to believe a particular witness's testimony, a factfinder may " 'consider the reasonableness of the testimony and all the facts and circumstances surrounding the testimony.' " *State v. Greenwood,* 2021-Ohio-921 ¶ 41 (10th Dist.) quoting *State v. Brown*, 10th Dist. No. 15AP-935, 2016-Ohio-7944, ¶ 35.

{¶ 43} Here, the trial court heard testimony from M.S. outlining several incidents of domestic violence, beginning with an incident wherein appellant held a gun to his own head and then M.S.'s head while threatening to kill them both. Transcript of full hearing (T.) 12-15. This incident resulted in appellant being arrested and then placed in a mental health facility. T. 15.  Appellant did not counter this testimony.

{¶ 44} M.S. additionally testified that appellant did well for a period of time following his release from the mental health facility and she therefore felt safe both cohabitating with appellant and with appellant engaging in child care. T. 23. But ultimately appellant's mental health and behavior deteriorated again, leading to the incident wherein appellant physically moved M.S., leaving bruises on her arms, and two weeks later, the incident involving appellant destroying the internet connection and hitting M.S. in the mouth.

{¶ 45} Appellant argues the injury to M.S.'s mouth was self-inflicted and points to the testimony of his former girlfriend who stated M.S. habitually bites her lip. T. 70. M.S., however, denied this behavior. T. 32. Appellant also claims M.S.'s testimony is incredible because the photos of the injury to her lip taken by police do not show any swelling. But M.S. testified that officers took photos of the injury approximately 15 minutes after it was inflicted and at the time there was no swelling. She stated swelling set in within an hour after officers cleared the scene. T. 41.

{¶ 46} Simply because the finder of fact believed M.S.'s testimony over appellant's does not render the trial court's decision against the manifest weight of the evidence, and we find the trial court's decision was not against the manifest weight of the evidence.

{¶ 47} As to the minor children covered by the DVCPO, R.C. 3113.31(A)(1)(iii) includes in the definition of domestic violence "[c]ommitting any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code." R.C. 2151.031(C) states "no person shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. . ."

{¶ 48} M.S.'s testimony established that appellant's mental health had deteriorated since his hospital stay, that he aggravated the matter by drinking 12-24 cans of beer a day, and that alcohol made him "angry, sad, and kind of all over the place." T. 16. She feared not only for herself, but also feared appellant would take their son and not return him. T. 22. M.S. further testified that appellant drove drunk with her daughter in the car and had acted irresponsibly with a firearm while intoxicated and while the children were present when he threatened to shoot their mother and himself. T. 14, 19, 22. Given this history, we find the record contains sufficient evidence to support the trial court's decision to extend the DVCPO to the children.

{¶ 49} The third and fourth assignments of error are overruled.

V

{¶ 50} In his final assignment of error, appellant argues the trial court relied on facts outside the record and its own medical opinion in denying his objections to the magistrate's decision. We disagree.

{¶ 51} Appellant accuses the trial court of engaging in "gross speculation" and relying on facts outside the record in two instances. First, appellant takes issue with the trial court's finding that M.S.'s testimony regarding the injury to her lip, specifically the court's finding that M.S.'s testimony stating her lip became more swollen over approximately an hour was "consistent with such injuries and should be readily apparent to any person who suffered a contusion in their lifetime." Opinion/Judgment Entry filed February 5, 2025, docket item 26, at 6. Appellant further takes issue with the trial court's finding that "the fact that a victim of repeated domestic violence is hesitant to contact police, or express a desire to get the abuser help rather than contacting police, is not inconsistent with those who suffer domestic violence. How such victims respond to such abuse will depend on the individual. However, reluctance to contact police seems to be common response." Id. at 7.

{¶ 52} Appellant complains these statements amount to the trial court making medical and psychological determinations which are unsupported by any testimony or evidence in the record.

{¶ 53} We first note the trial court's statements were not conjured out of whole cloth. Rather they appear to be based on M.S.'s testimony indicating she did not call the police because she wanted to protect appellant, and her testimony that her lip did not swell immediately, but rather over the course of an hour. T. 15, 41-42.

{¶ 54} Next, while appellant complains the trial court misconstrued his objections because "this was not an issue of how fast an average bruise might take to become visible" the trial court's comments appear to be in response to appellant's manifest weight argument that M.S.'s explanation of her injury was inconsistent with the photographic

evidence, and that her failure to contact police in response to domestic abuse rendered her testimony incredible. Supplemental Objections to Magistrate's Decision filed January 27, 2025, docket item 25, at 2, 5, 7.

{¶ 55} We observe that both of trial court's comments went to the believability of M.S.'s testimony, while applying reason, common sense, and life experience. Appellant had cited no authority to support a conclusion that a trial court is precluded from applying such tests to weigh the credibility of a witness.

{¶ 56} The final assignment of error is overruled.

{¶ 57} For the reasons stated in our accompanying Opinion, the judgment of the Licking County Court of Common Pleas is affirmed.

{¶ 58} Costs to Appellant.


By: King, P.J.

Baldwin, J. and

Gormley, J. concur.